506 A.2d 1165

**Wayne Anthony SMITH**

v.

**STATE of Maryland.**

**No. 113, Sept. Term, 1985.**

Court of Appeals of Maryland.

April 3, 1986.

2

David R. Durfee, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

MURPHY, Chief Judge.

This case involves a probation revocation hearing and whether the trial judge, in revoking probation, acted on an improper basis and contrary to the due process requirements of the Fourteenth Amendment.

## I.

On February 11, 1981, Wayne Anthony Smith was convicted of larceny in the Circuit Court for Baltimore City and placed on five years' probation. On May 23, 1984, the Division of Parole and Probation alleged that Smith had violated the following conditions of his probation:

Rule 3d: Must get permission from agent before owning, possessing or using dangerous weapon;

Rule 4: Must obey all laws;

Rule 5: Must notify probation agent at once if arrested;

Rule 9: Must pay $729.45 in costs and restitution; and

Rule 10: Must undergo drug screening to determine if there is a drug problem and complete a program same if directed by Probation Department.

At the hearing on December 31, 1984, Smith's probation agent, Ernestine DeVance, testified that Smith had been charged with assault, assault with intent to murder, and handgun violations during his probationary period. She also testified that Smith had been arrested for a handgun violation and for armed robbery on December 2, 1984.[1] DeVance said that Smith did not notify her of these arrests, thereby violating Rule 5 of his probation. She also testified that Smith violated Rule 9 by failing to pay the required

---

1. All of these criminal charges were either nol prossed by the State or were merely arrests at the time of the hearing.

$13.00 monthly payment for restitution and court costs. DeVance stated that Smith had also violated Rule 10 by failing to undergo drug screening, but she admitted that she had no record of ever instructing Smith as to when, where, or to whom he was to have reported for screening.

DeVance testified that Smith had violated additional conditions of his probation for which he had not been charged. These included Smith's alleged failure to appear for a previously scheduled probation violation hearing on May 25, 1984 and to notify his probation agent of his change in address.

Smith testified that he had been unable to make any of the required restitution payments because he was imprisoned between February 10, 1981 and December 8, 1983. Smith said that two or three months after his release he was again arrested on a domestic charge which was later nol prossed by the State. During Smith's brief interlude from imprisonment, while on probation, he was unemployed.

At the close of evidence, Smith unsuccessfully moved for dismissal, and asked to be heard regarding the alleged violation of Rule 4—failure to obey all laws. The court denied the request, responding:

"Well, I don't grant a motion or deny a motion as to one specific ground. The charge is violation of probation and even though it might not be sustainable on one ground if it's sustainable on another that is sufficient."

The court then found that Smith had violated conditions of his probation, stating:

"I believe that there has been sufficient testimony here today to indicate that certain rules have been violated by you. Unfortunately I think it might have been easier for the probation agent to testify as to what rules you had not violated rather than the long litany of those that you had."

On appeal to the Court of Special Appeals, Smith argued that the trial court's finding that he had violated conditions of his probation should be reversed because it was improp-

erly based on nol prossed charges or mere arrests (Rule 4); possession of a firearm without permission (Rule 3d); violation of conditions which the State had not charged (Rules 3a and 7);[2] failure to make restitution and pay court costs (Rule 9); and failure to undergo drug screening (Rule 10).

The State conceded that Smith could not be found to have violated Rules 3a and 7 because he had not been formally charged with those violations. The State also conceded that there was insufficient proof on the record of violations of Rules 3d and 4 in that those violations were based only on arrests and nol prossed charges. Notwithstanding these errors, however, the intermediate appellate court, in an unreported opinion, concluded that there remained sufficient evidence in the record of other violations warranting the revocation of Smith's probation. Specifically, the court found that sufficient evidence existed that Smith had failed to pay restitution and court costs (Rule 9) and had not undergone the required drug screening (Rule 10). It further determined that Smith had not informed his probation officer of his arrests during the probationary period (Rule 5).

## II.

Probation is a matter of grace which is in effect a bargain made by the people with the malefactor that he may be free as long as he conducts himself in a manner consonant with established communal standards and the safety of society. *Donaldson v. State*, 305 Md. 522, 531, 505 A.2d 527 (1986) (quoting *Scott v. State*, 238 Md. 265, 275, 208 A.2d 575 (1965)). *See also Matthews v. State*, 304 Md. 281, 292–93, 498 A.2d 655 (1985). Accordingly, the procedural protections given a probationer are not the same as those afforded a defendant at a criminal trial, and probation may be revoked by a trial court if it is reasonably

---

2. Rule 3a required Smith to get permission from his probation agent before changing his home address, and Rule 7 required him to appear in court when notified to do so.

satisfied that a violation of a condition of probation has occurred. *Howlett v. State,* 295 Md. 419, 456 A.2d 375 (1983); *Hutchinson v. State,* 292 Md. 367, 369, 438 A.2d 1335 (1982); *Dean v. State,* 291 Md. 198, 202, 434 A.2d 552 (1981). To be enforceable a condition of probation must not be vague, indefinite or uncertain. A general condition of probation is permissible only "so long as it is contemplated that the court or its designee (usually the probation authority) will provide the probationer with reasonable, specific direction within the ambit of the initially expressed general condition, and such guidance is in fact given." *Hudgins v. State,* 292 Md. 342, 348, 438 A.2d 928 (1982).

Even where the State is able to prove to the court's satisfaction that an enforceable condition of probation has been violated, probation will not be revoked where failure to comply was not wilful but rather the result of factors beyond the probationer's control. *Coles v. State,* 290 Md. 296, 308, 429 A.2d 1029 (1981); *Humphrey v. State,* 290 Md. 164, 167–68, 428 A.2d 440 (1981). Nor will a wilful violation of probation automatically result in the revocation of probation as the final determination of the appropriateness of revocation is within the discretion of the trial judge. *Humphrey, supra,* 290 Md. at 168, 428 A.2d 440. The court's decision to revoke probation must be based on the violation of a valid condition of probation. A decision based in whole or in part on improper grounds cannot stand. *Dean v. State, supra,* 291 Md. at 203, 434 A.2d 552.

### III.

In the present case the trial judge found that sufficient evidence existed to indicate that "certain rules" of Smith's probation had been violated; however, he did not specify the particular rules violated. The Court of Special Appeals, in determining that the trial judge could be reasonably satisfied that Smith had not complied with a valid condition of probation, relied upon *Hebb v. State,* 31 Md.App. 493, 356 A.2d 583 (1976) for the proposition that "a judge is pre-

**8**

sumed to know the law and apply it correctly." The court also concluded that the trial judge,

"in revoking appellant's probation, relied only upon appellant's violation of those conditions for which there was sufficient evidence and for which he was properly charged."

■ The first of three properly charged violations for which the intermediate appellate court found sufficient evidence was Smith's failure to pay restitution and court costs in the amount of $13 per month. The record discloses, however, that Smith had been imprisoned for all but a few months throughout his probationary period and was unemployed during the short time that he was free. Under these circumstances, Smith's failure to pay restitution and court costs, without more, cannot be characterized as wilful and cannot properly serve as a basis for the revocation of his probation. *Coles, supra,* 290 Md. at 308, 429 A.2d 1029; *Humphrey, supra,* 290 Md. at 167–68, 428 A.2d 440.

■ Moreover, on the record before us, we think the trial judge's finding that Smith violated the condition of probation requiring that he pay restitution and court costs constituted a denial of due process under the Fourteenth Amendment. As we said in *Howlett v. State, supra,* 295 Md. at 427, 456 A.2d 375, the legality of probation revocation proceedings "is tested by fundamental fairness—the touchstone of due process." *See also Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

Following uncontested evidence of Smith's imprisonment and unemployment while free, the trial judge said: "I find absolutely no mitigating circumstance here." He made no further inquiries. The Court of Special Appeals noted that under *Turner v. State,* 61 Md.App. 1, 484 A.2d 641 (1984), and *Humphrey v. State, supra,* the probationer has the burden of proving that violations were not committed wilfully. The court further noted that Smith had been free for two months during the probationary period and had made no payments during that period. Without comment on

Smith's uncontested testimony that he was unemployed during his brief period of freedom, the court held that Smith had failed to carry his burden of showing the failure to pay restitution was not wilful.

Placing reliance upon *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), Smith contends that the trial court had a duty to inquire into whether his failure to pay restitution was wilful and that the burden of proof was improperly placed upon him. In *Bearden,* the defendant was placed on probation following a plea of guilty to burglary. His probation was conditioned on the payment of $250 in restitution and a $500 fine. The defendant managed to pay the initial $200 when due by borrowing; however, he was unable to pay the balance when it came due four months later, and the trial court revoked his probation. In reversing and remanding for further proceedings, the Supreme Court reasoned that the "decision to place the defendant on probation ... reflects a determination by the sentencing court that the State's penological interests do not require imprisonment." *Id.* at 670, 103 S.Ct. at 2071. It then said:

"[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation

would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.* at 672–73, 103 S.Ct. at 2072–73.

The Court in *Bearden* further noted that at the revocation hearing the defendant had testified that he had little in the way of assets and had been unable to find work. As to this, the Court said:

"While the sentencing court commented on the availability of odd jobs such as lawnmowing, it made no finding that the petitioner had not made sufficient bona fide efforts to find work, and the record as it presently stands would not justify such a finding." *Id.* at 673, 103 S.Ct. at 2073.

As in *Bearden*, the trial judge in the present case made no inquiry or finding as to whether Smith had made a sufficient effort to find employment. Furthermore, there is nothing in the record that would justify such a finding.

 The second charged violation found to be supported by sufficient evidence was Smith's failure to undergo drug screening to determine if he had a drug problem "and to complete a program same if directed by Probation Department." A violation of such a general condition is enforceable only if the Division of Parole and Probation provided Smith with reasonable, specific directions defining what conduct was required in order to comply. *Hudgins v. State, supra.* At the violation hearing, however, Smith's probation agent testified that she had no record of having instructed Smith as to when, where or to whom he was to report for screening. Accordingly, a violation of this general condition was an improper basis on which to revoke probation.

 Smith's failure to report his arrests during the probationary period was concededly a properly charged violation. However, the record clearly reveals that, in exercising discretion to revoke probation, the trial judge relied on the existence of other violations, stating only that "certain rules" had been violated by Smith. Specifically, he

said: "I think it might have been easier for the probation agent to testify as to what rules you had not violated rather than the long litany of those that you had." In that Smith's failure to report arrests was the only properly charged violation supported by the evidence, the trial judge may have based his decision to revoke Smith's probation partly on improper grounds. In *Dean v. State, supra,* we held that fundamental fairness is violated when a trial court revokes probation based partly on improper grounds. Therefore, the court on the record before us violated Smith's right to due process in revoking his probation.

■■■ Moreover, the trial court's findings lack the specificity required by due process. In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli, supra,* the Court set forth the requirements of due process for probation revocation hearings and included among these " 'a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' " *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1762 (quoting *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604). The Court recently discussed the reasoning underlying the written ruling requirement in *Black v. Romano,* —— U.S. ——, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985) where it said: "The written statement required by *Gagnon* and *Morrissey* helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence."[3] *Id.* at 2259. *See also United States v. Smith,* 767 F.2d 521 (8th Cir.1985), a case involving several asserted grounds for probation revocation where the court, following *Black v. Romano, supra,* remanded the case to the trial court for a written ruling. The court there stated that it was unable to determine the basis

---

**3.** We think the written statement requirement of these cases may be satisfied by the trial judge dictating the reasons for revoking probation, on the record, to the court reporter or other authorized medium of court reporting.

12

upon which probation had been revoked. As in *Smith,* we think it is necessary that the trial judge make specific findings as to those properly charged probation violations upon which he based his decision to revoke Smith's probation.

JUDGMENT REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY THE APPELLEE.